## William Grace Company v. Patrick Gallagher.

### Gen. No. 13,800.

MASTER AND SERVANT—*when safe place to work rule does not apply.*
The safe place to work rule does not apply where the servant is
engaged by the master in connection with the construction of a
building in process of erection. Hansell v. Clark, 115 Ill. App. 209,
affirmed in 214 Ill. 399, explained. Pressed Steel Car Co. v. Herath,
207 Ill. 576, distinguished.

Action in case of personal injuries. Error to the Municipal Court
of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in this
court at the October term, 1907. Reversed. Opinion filed April 20,
1908.

PATRICK H. O'DONNELL and GEORGE PFIRSHING, for
plaintiff in error; R. J. FOLONIE, of counsel.

B. J. WELLMAN, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion
of the court.

This writ of error is sued out to reverse a judgment
of the Municipal Court for $999, rendered in a cause
of the "fourth class," for personal injuries sustained
by the plaintiff, on the claim that negligence is at-
tributable to defendant in the happening of the acci-
dent inflicting the injuries upon plaintiff, who at the
time was a laborer in the employ of defendant.

The negligence charged consists in the alleged fail-
ure of defendant to furnish plaintiff with a reasonably
safe place in which to work. As defendant offered no
evidence in contradiction of the case made by plaint-
iff's proof, the question presented for our decision is,
does the case made by such proofs, with all legitimate
inferences to be gathered from it, entitle plaintiff to
prevail in his cause and maintain the verdict returned
by the jury in his favor. Incident to such determina-
tion, and preceding it, we must consider what the duty

of the master to this particular servant was, in the environment in which he is found at the time the accident occurred, to furnish him with a safe place in which to work. We said in Falkeneau v. Ginley, 131 Ill. App. 399, "it is plain that in the construction of a building there are many dangers to be encountered until final completion, and the safe place rule as to a contractor of construction does not apply during the process of building." Counsel for plaintiff, however, insists that the doctrine of cases like the one *supra* and Richardson v. Packing Co., 72 *ibid.* 77, and Merchant v. Mickelson, 101 *ibid.* 401, have been so distinguished in Hansell v. Clark, 115 *ibid.* 209, affirmed in 214 Ill. 405, as not to be controlling here. So that there may be no misapprehension as to the ruling in the Hansell-Clark case, *supra*, we quote instruction 9:

"9. The court instructs the jury that the declaration in this case charges the defendant with negligence while the plaintiff was working in a building in the process of construction. In this connection the court charges you that the obligation of a master to provide a reasonably safe place for his servants to work in, does not impose upon him the duty of keeping a building in which such a servant is employed in a safe condition at every moment of his work, so far as its safety depends upon the due performance of the work by him and his fellow servants, if any.

"So, in the case at bar, if the evidence shows that the column in question was properly and safely erected, in the exercise of due and ordinary care, then the fact that it was not anchor-bolted or braced, does not entitle the plaintiff to a verdict, although the anchor-bolting or bracing might have made the column still more secure. If the proof shows that the column was thrown down as the result of other causes than the failure to exercise due care on the part of the defendant in the erection and placing of the column, then the defendant is not liable, and the verdict of the jury should be not guilty."

Judge Windes, in commenting on this instruction,

said: "It is true, the ninth instruction limits the duty of appellant to have and keep the building in a safe condition by the qualification that he is not bound to do so 'at every moment of his (the servant's) work, so far as its safety depends upon a due performance of the work by him and his fellow servants, if any'."

We cannot observe any deviation from the rule announced in the cases cited by anything said in instruction 9 *supra,* or in the court's comments upon it. The right to recover was chargeable to specific negligence of the master.

In discussing Richardson v. Packing Co., and Merchant v. Mickelson, *supra,* the court say in Hansell v. Clark, *supra,* "We think both these cases clearly distinguishable from the one at bar; the Richardson case because the conditions there were temporary and undergoing constant changes in the performance of the work, and in the Merchant case the work was necessarily dangerous, whereas the conditions here, as the evidence shows, were not temporary in their nature, nor was the work necessarily dangerous." The right of recovery rested on the negligence charged and proven against the master in the erection of the columns which fell and killed the servant." It is true that the court did further say in its opinion that "It is a serious question also, if the doctrine of these cases is not overruled by the Supreme Court in the case of Herath *infra.*" But on examining the Herath case, which is Pressed Steel Car Co. v. Herath, 207 Ill. 576, we are unable to find any conflicting doctrine. That case was squarely and unequivocally, we think, predicated on an explicit order of the master to the servant to go into a place which they both knew was fraught with danger. It was "an order case" in contradistinction to a "safe place case;" and the court there say: "But we think it equally clear that both the employer and the employe believed the section of the roof would remain in place until the truss should be moved so the roof would no longer be supported by it.

Under these circumstances, and with the knowledge on the part of both employer and employe, the foreman ordered the employe and his fellow servant to go beneath the second section of the roof, and in obedience to the command of the master the deceased went onto a place which he knew, in a degree, to be dangerous, and was killed. It is the primary duty of an employe to obey the commands of his employer. If ordered to perform an act which he knows is attended with danger, he is called upon to decide whether he will be justified in refusing to obey on the ground that the perils of obedience are too great. In this dilemma the law requires of him to act with that degree of prudence that would have controlled an ordinarily careful and discreet man. An inconsiderate and improper order given by the master may constitute actionable negligence, and the master may not always be allowed to escape liability on the ground that the servant should have disobeyed his order and not exposed himself to danger which attended compliance therewith.'' The court characterized the order of the foreman in the Herath case as ''clearly inconsiderate and negligent.''

Some confusion has at times occurred consequent upon a failure at all times to distinguish between one and the other of the two legal principles and the doctrine announced in their support; but the cases will be found to be uniform that wherever in construction and destruction cases the question of furnishing a safe place by the master for the servant to do his work in, the liability when upheld has been under the charge, accompanied by proof in its support, that the master was guilty of some specific act of negligence to which the accident is primarily traceable.

It is contended that defendant was the general contractor for the erection of the county building, in the course of the construction of which the accident to plaintiff happened; but no evidence is found in the record supporting such contention.

It is also insisted that the brick which unfortunately struck plaintiff came through a hole in the temporary floor above the place where plaintiff was working at the time, but no witness examined so testified, nor was any one produced on the trial who knew, except by conjecture and surmise, as to where the brick in fact came from. For aught that appears to the contrary, it may have been thrown by some miscreant in a spirit of mischief, deviltry or revenge. The proof furnishes no more justification for the conclusion that the brick fell through the hole above plaintiff than that it was projected in any of the ways suggested, or in some other way. The fact only remains that plaintiff was hit with a brick, but whether projected by design or accident or as the result of negligent conduct imputable to defendant, we are unable to say from the proofs.

Again, plaintiff's counsel say that the judgment is right and should not be disturbed because defendant "failed in its duty to comply with the ordinance to make substantial temporary floors over its workmen. It entirely failed to have a floor just above appellee-plaintiff."

But is is plain that the ordinance referred to, being section 728, article 75, Rev. Mun. Code of Chicago, has no application in whatever view may be taken of it or the extent of its operation, in the light of the fact that the evidence fails to prove that the offending brick came through a hole in the temporary overhead floor. There is no evidence that riveters or other persons were working on the floor above plaintiff, or that any bricks were on that floor. The witness Mulcahy testified he did not see anybody working up "there" when he looked up; he never saw the brick until he saw it bound off plaintiff's back. Neither did he know that the brick came through the hole. On cross-examination this same witness testified that there were no men working between plaintiff and where the hole was at the time the brick hit plaintiff. Godfrey says he

never saw any hole until the brick struck plaintiff; he did not see the brick fall through the hole, neither did he know where it came from, nor that any workmen were at work on the floor above at the time the brick struck plaintiff. Plaintiff himself testified that he had no knowledge as to where the brick which struck him came from, or that men were working on the floor above him.

The evidence fails to establish any actionable negligence imputable to defendant justifying an award of damages against it for the injuries suffered by plaintiff while in its employ. The trial judge should have given the peremptory instruction asked by defendant, directing the jury to find a verdict in its favor. The verdict and judgment being manifestly contrary to the weight of the evidence, the other points made and argued are not important to our decision.

The judgment of the Municipal Court, being contrary to the law and the evidence, is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*